## No. 11,621.

### Mesa County Co-operative Association v. McKinney.

#### Decided May 16, 1927.

Action involving validity of sale of personalty under distraint warrant for taxes. Judgment for county treasurer.

### *Affirmed.*

1. Taxes and Taxation—*Validity of Sale—Estoppel.* Where an association through its representatives acquiesced in a sale of its personal property for delinquent taxes and accepted a balance, over and above the amount of taxes, derived from the sale without protest, it is held estopped from thereafter denying the validity of the sale.

2. Evidence—*Knowledge of Law—Presumption.* While the presumption that everyone knows the law is not an actual fact, it will be applied wherever necessary to the due administration of justice.

*Error to the District Court of Mesa County, Hon. Straud M. Logan, Judge.*

Messrs. Vincent, Vincent & Bowie, for plaintiff in error.

Messrs. Heckman & Mitchell, Messrs. Burgess & Adams for defendant in error.

*Department Two.*

Mr. Justice Campbell delivered the opinion of the court.

The Mesa County Co-Operative Association of Mesa county, Colorado, was delinquent in the payment of taxes upon its store fixtures and merchandise, and the county treasurer, under the statute, issued a distraint warrant for their collection, seized the property and sold

it. The association brings this action, based upon the alleged illegality of the sale, to recover the difference between the net proceeds of the sale and the actual value of the things seized and sold, which is said to be in excess of the sum realized. There was a trial before the court and a jury, the verdict being for the defendant upon which judgment was entered which is brought here for review by the plaintiff. Both parties have assigned errors. We shall dispose first of the assignments of the defendant in error.

The court ruled adversely to the treasurer's contention that section 6084, C. L. 1921, does not require ten days' notice in order to effect a valid sale. Defendant in error, treasurer, by his cross-assignment, says that the statute fairly construed, in connection with section 7376 of the same compilation and other pertinent statutes, does not require ten days' notice. For the purpose of this review only we shall assume, but not decide, that the trial court was right in its ruling. We do so because, irrespective of the alleged invalidity of the sale because of the time for which the notice of the sale was published, less than ten days, and failure to post three notices of the sale at public places, we are of opinion that the judgment must be affirmed and that the assignments of error by the plaintiff in error are without merit. The jury in effect found, under appropriate instructions, that notwithstanding noncompliance by defendant with the statutory requirements as to publishing and posting of notices of the sale, the plaintiff may not complain thereof in this action because of his conduct, which amounted to a waiver of all irregularities and omissions, and because it consented to the sale as made by the treasurer.

After an inventory was made of the stock and fixtures, which were seized under the distraint order, the county attorney, representing the treasurer, informed the plaintiff's attorney thereof. The plaintiff's attorney said that he thought ''that was very good, he thought that

was the way out of it and was glad the county treasurer had taken the action," and asked the county attorney to work in connection with it; and the county attorney told him he would keep him advised as to the prospects of the sale. Plaintiff's attorney admitted that he made this statement and said the remark probably was made in reference to a situation, which he thus explained: "Of course the credit association was in desperate financial difficulties and none of the creditors would take it over and that is what I had reference to, that perhaps was a solution, that the matter would be disposed of at auction and possibly the plaintiff would realize something for the creditors out of the sale." Before the sale was advertised plaintiff's attorney had promised the county attorney to call a meeting of the association's directors, which was held, and its attorney testifies that after a general discussion at this meeting, "it seemed everybody was broke." The sale was first advertised to be held June 1st, but was adjourned in order to get persons out of the city to examine the property with a view to bid upon it. Plaintiff's attorney and Mr. Heckman, the county attorney, after talking over the situation agreed to such postponement. On the morning of June 4, at the hour of adjournment, the property was "auctioned off" by the county attorney before a crowd of at least twenty-five people. Plaintiff's attorney, its president and secretary attended the sale. They pointed out certain articles of property belonging to others and requested that they be not sold and they were not. The county attorney consulted plaintiff's attorney as to whether it was best to sell all the property at one time, or to sell the merchandise first, and the fixtures afterwards, or the fixtures first and the merchandise afterwards. The plaintiff's attorney suggested that he "sell it all at once, and if that was not satisfactory to sell separately" and his suggestion was acted upon by the county attorney. Thereupon all the property was so offered, but no bid was made and the fixtures and

stock were sold separately. After the property was sold and the money was collected from the sale, and the taxes, interest and costs and commissions were paid, the county attorney paid over the balance of the proceeds of the sale, amounting to $58.63, to the plaintiff's attorney, who gave his receipt therefor. At the time this balance was turned over the county attorney explained to plaintiff's attorney the calculations which he had made, and the deductions as aforesaid. This balance was kept and retained by plaintiff's attorney without any protest or objection of any kind. No protests or objections to the sale of any kind were made by the plaintiff's attorney, or the two directors of plaintiff present, at the time of the sale. We shall assume that the technical objections made by the defendant's attorney to the noncompliance with our rules on the subject of assignments of error and motions for new trial are not well taken. We shall base our judgment of affirmance upon what seems to us to be waiver, estoppel and consent, or one or more of them, by the plaintiff to the alleged illegal sale.

In legal treatises and decisions of courts it is often said that one is conclusively presumed to know the law. As a matter of fact many people do not know the law. Under the facts of this case it is not our purpose to take or enforce the rule in its full sweep. If everybody knew the law there would be, as has been aptly said, no need of courts of appeal whose existence shows that sometimes judges themselves may be ignorant of the law. The legal presumption, however, exists and is applicable wherever necessary to the due administration of justice. Otherwise mere ignorance, in fact, of law would furnish immunity from punishment for violation of the criminal code, and immunity from liability for actual loss for violations of personal and property rights. Counsel for the plaintiff vigorously assert that the conduct and the acts of the plaintiff's attorney and its directors at the time of the sale operate neither as a waiver nor consent nor as estoppel because they were

not based on full knowledge of the facts and of their rights under the statute. They say that plaintiff did not know at the time of the sale of the alleged failure as to the posting of the notice and the time of advertising, neither did the county attorney; hence there was not a loss of plaintiff's rights to attack the sale for such infirmities. We cannot agree with this contention. We think under the facts, as above outlined, the conduct of plaintiff, by its representatives, at the time of the sale, and by its subsequent conduct in receipting for the balance of the proceeds of the sale after the delinquent taxes, costs and other necessary disbursements were made, show an acquiescence or consent or ratification by the plaintiff which cannot now be withdrawn. Among other authorities, see: 23 C. J. secs. 654, 655; 10 R. C. L. sec. 130, p. 825, under the title of "Estoppel"; sec. 124, p. 1328, under the title of "Executions"; *Hazel v. Lyden,* 51 Kas. 233, reported in 37 Am. St. Rep. 273. In Bigelow on Estoppel (4th Ed.) p. 661, it is said: "In like manner if one without actually inducing another to act in a particular way, assent to the thing done and seek to derive a benefit from it, he cannot in case of disappointment deny the validity of the act assented to." This is cited with approval in *Fallon v. Worthington,* 13 Colo. 559, 571, 22 Pac. 960, 6 L. R. A. 708, 16 Am. St. Rep. 231. We think the plaintiff not only waived the alleged irregularity but derived some benefit from the sale. It made no protest whatever and might, by the exercise of diligence, have ascertained before the time of the sale, the alleged irregularity. It is now too late to assert to the contrary on this trial. Plaintiff's attorney and the county attorney expressly agreed to the postponement of the sale from June 1 to June 4, and this agreement was for plaintiff's benefit. We think it would be inequitable and unconscionable to set aside the judgment. The attorney for the plaintiff either had, or might have had, full knowledge of the facts of the seizure and the subsequent proceedings thereunder before the sale, and

after consenting to and aiding in the sale, it has no ground of complaint. The judgment is therefore affirmed.

Mr. Chief Justice Burke, Mr. Justice Adams and Mr. Justice Butler concur.